UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| VANESSA NGAM,<br><br>Plaintiff,<br><br>vs.<br><br>JENNIFER KLUDT, AVERA ST. LUKE ABERDEEN SD STAFF,<br><br>Defendants. | 1:24-CV-01025-ECS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

Plaintiff Vanessa Ngam ("Ngam"), proceeding *pro se*, sued Defendants for defamation, prejudice, discrimination, and alteration of patient medical records. Doc. 1. Ngam's Complaint seeks $2,000,000, as well as a cease and desist letter. Id. at 3–4. Defendants moved to dismiss Ngam's claims for lack of subject-matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 6. Ngam filed a response to Defendants' motion alleging additional facts to supplement her Complaint. Doc. 9.

This Court finds it has subject-matter jurisdiction over Ngam's claims. Thus, Defendants' motion to dismiss for lack of subject-matter jurisdiction, Doc. 6, is denied. Ngam's defamation and alteration of patient medical records claims, however, fail to state a claim, and thus, are dismissed without prejudice. Ngam's discrimination claim, on the other hand, survives. Therefore, Defendants' motion to dismiss for failure to state a claim, Doc. 6, is granted in part and denied in part.

I. **Background**[1]

In March 2023, Ngam was employed on a short-term contract as a travel nurse at Avera St. Luke's Hospital, in Aberdeen, South Dakota. Doc. 9 at 1; Doc. 9-1 at 4. During one of her night shifts, Ngam was assigned to the intensive care unit ("ICU"), where she worked with a patient who had experienced delirium. Doc. 9 at 1. The patient's symptoms included both visual and auditory hallucinations. Id. To manage the patient's delirium, Ngam administered a Precedex drip, which caused him to become hypotensive. Id.

After noticing the patient's blood pressure drop, Nurse Kendle Hargrove allegedly placed the patient in the Trendelenburg position to "help perfuse his brain during this period of hypotension." Doc. 9-1 at 5. Hargrove left, and the patient suffered severe respiratory distress. Doc. 9 at 1–2. The patient requested that Ngam help him raise his head so that he could breathe more easily, which she did. Id. at 2. The patient's blood pressure increased slightly before it lowered because his breathing improved with his head raised. Id. Ngam called the hospital's intensivist, who ordered that a liter of fluid be administered over a two-hour period. Id. Ngam claims the fluid raised the patient's pressure levels "gradually and safely to prior levels." Id. The patient ultimately passed away the following morning, a few hours after Ngam ended her shift. See generally id.; see also Doc. 9-1 at 6.

---

[1] Courts "liberally construe pro se filings." Lamar v. Payne, 111 F.4th 902, 907 n.2 (8th Cir. 2024). For this reason, courts have considered factual allegations made in a *pro se* plaintiff's response brief when ruling on a motion to dismiss. Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018); Neudecker v. Boisclair Corp., 351 F.3d 361, 362 (8th Cir. 2003) (per curiam); Anthony v. Runyon, 76 F.3d 210, 214 (8th Cir. 1996); Ketchum v. City of West Memphis, 974 F.2d 81, 82 (8th Cir. 1992) ("Because plaintiff is proceeding *pro se*, we treat facts set out in [plaintiff's opposition to defendant's motion to dismiss] as *de facto* amendments to the complaint."); Winfrey v. Brewer, 570 F.2d 761, 764 & n.4 (8th Cir. 1978). Thus, this Court will consider the factual allegations contained in Ngam's response to Defendants' motion to dismiss. At this stage, this Court accepts Ngam's factual allegations as true and views them in the light most favorable to her, as the non-moving party. Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004) (citing Stone Motor Co. v. Gen. Motors Corp., 293 F.3d 456, 464 (8th Cir. 2002)).

An email communication from Operations Supervisor Jennifer Kludt ("Kludt") indicated that she had received "multiple phone calls from nursing staff . . . all report[ing] clinical and behavior concerns with" how Ngam handled the patient. Doc. 9-1 at 3, 6. So Kludt "asked the ICU nurses to document their concerns and send [them] to [her]." Id. at 4, 6. Kludt then forwarded these concerns, along with a summary of the previous night's events, to Avera Human Resources. Id. at 3–6. That summary stated:

> I received multiple phone calls from nursing staff at 0730 on 3/12/23. They all reported clinical and behavior concerns with [Ngam] this weekend. I need to follow up with Dr. Khosla as he works nights, but it was reported to me that [Ngam] had a confused patient that she was not handling very well in ICU. She called Dr. Khosla (our hospitalist on service) for an order for a Precedex drip. He did not want to give her the order, so she contacted EICU and they gave her the order. When she initiated the Precedex drip, the patient's blood pressure tanked, and he needed fluid boluses. The IV fluid boluses then put this patient into cardiogenic shock. The patient was unstable at shift change and then ended up passing away.

Id. at 3–4.

Avera St. Luke's Hospital cancelled Ngam's nursing contract. Id. at 3. The travel nursing agency that employed Ngam then filed a complaint against her with the South Dakota Board of Nursing ("SDBON").[2] Id. at 1–2.

Ngam claims that she hired an attorney to represent her before the SDBON, but the case could not proceed to an administrative hearing "due to the hospital falsifying patient medical records" and "not providing [Ngam's] complete documentation on the patient." Doc. 1 at 3. It appears, however, that the SDBON entered some sort of proposed reprimand order regarding

---

[2] Ngam filed a sur-reply without seeking leave of court. Doc. 13. In Ngam's sur-reply she alleges that Avera initiated the complaint and "[t]he defamatory statements were made by Avera staff." Id. at 1. "When the board of nursing contacted [her], it was addressing the issues in the complaint from Avera staff and not from [the travel nursing agency's representative], who basically signed the second page of complaint form to indicate and confirm where [Ngam] had active RN licenses at." Id.

Ngam's nursing license. Doc. 9 at 1–3. According to Ngam, that proposed order[3] "twisted the narrative" and "insinuate[d] that [she] did not understand that the medication caused the patient's blood pressures to be low thereby questioning the hospital['s] recommendation to avoid it in the patient." Id. at 1, 3. Ngam also claims that "[t]he initial paragraph on the complaint to the board of nursing states a wrong fact."[4] Id. at 1.

Based on Kludt's understanding from staff reports, Kludt included in her email to Avera human resources staff that Ngam contacted the EICU for a Precedex drip after the hospitalist had already denied her request for one. Doc. 9-1 at 3. But according to Ngam, she called the intensivist first to report the patient's delirium. Doc. 9 at 1. She alleged that the intensivist recommended Precedex, which she objected to. Id. Ngam claims that she then called the hospitalist "and informed him the intensivist want[ed] [P]recedex reinitiated . . .[,]" and the hospitalists remained silent, "did not ask [her] the reasons it was recommended, the condition of the patient[,] or stop [her] from initiating it." Id. So, she administered a Precedex drip. Id.

Based on these purported factual inaccuracies and the nursing staff's negative reports on Ngam's competency and character, she filed suit against Defendants alleging that statements to human resources constitute defamation. Doc. 1. She also alleges that Kludt's handling of the matter was fueled by racial prejudice. See id.; Doc. 9 at 3–4.

---

[3] In Ngam's response to the motion to dismiss, she refers to the SDBON's decision as a "reprimand order" and "a proposed reprimand order on [her] license," despite her claiming that the administrative hearing could not proceed due to falsified medical records. Doc. 9 at 1–2; see also Doc. 1 at 3. She does not ultimately clarify whether an official reprimand order was issued against her license or merely a proposed order. See generally Doc. 9

[4] Ngam references the initial paragraph of the complaint, Doc. 9 at 1, but it is unclear what is the initial paragraph. She submitted as exhibits a letter from the Director of Compliance and Complaints for the SDBON, a complaint form filed by the contract agency Ngam worked for, and email exchanges from Avera staff addressing their concerns with Ngam's conduct. Doc. 9-1. It is unclear if these pages are the entirety of the complaint against Ngam or if other information was filed as part of the SDBON complaint against her.

4

## II. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

### A. Legal Standard

"Federal Courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. of Am., 511 U.S. 375, 377 (1994). As such the existence of jurisdiction is a "threshold inquiry" to be decided in every federal case. Crow Creek Sioux Tribe v. Bureau of Indian Affs., 463 F. Supp. 2d 964, 967 (D.S.D. 2006) (citation omitted). "Jurisdictional issues are for the court to decide and the court has broad power to decide its own right to hear a case." Id. (citation omitted). "The party seeking to invoke federal jurisdiction . . . carries the burden, which may not be shifted to another party." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (citation omitted). Original jurisdiction can arise under federal question or diversity of citizenship jurisdiction. 28 U.S.C. §§ 1331–1332. Federal question jurisdiction applies to "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under 28 U.S.C. § 1332, federal courts have original jurisdiction of all civil actions between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a); see also OnePoint Sols., LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007).

Defendants move to dismiss Ngam's claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure because "Plaintiff has not stated any claims arising from the Constitution, federal statutes, or treaties." Doc. 7 at 3. Defendants also challenge whether Ngam has satisfied the amount in controversy requirement for diversity jurisdiction. Id. at 4–5. See also Aerostar, Inc. v. Haes Grain & Livestock, Inc., No. C 11-3058-MWB, 2012 WL 1030446, at *5 (N.D. Iowa Mar. 27, 2012) ("Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-

answer motion to dismiss for lack of subject matter jurisdiction. Such a motion may be based on insufficient amount in controversy." (citation omitted)).

In challenging subject-matter jurisdiction, a defendant may make either a facial or factual challenge to jurisdiction. Middlebrooks v. United States, 8 F. Supp. 3d 1169, 1173 (D.S.D. 2014). A facial challenge to jurisdiction only requires "the court to examine the complaint and determine if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction." Id. (citing Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). Under a facial challenge, the court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Osborn, 918 F.2d at 729 n.6. A factual challenge, on the other hand, occurs when the face of the complaint "is formally sufficient," but the defendant argues that "there is in fact no subject-matter jurisdiction." Jackson v. Abendroth & Russell, P.C., 207 F.Supp.3d 945, 950 (S.D. Iowa 2016) (quoting Apex Dig., Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 444 (7th Cir. 2009)).

This Court views Defendants' Rule 12(b)(1) motion as a facial challenge to jurisdiction;[5] Defendants argue that the facts alleged in Ngam's Complaint do not satisfy federal question jurisdiction and do not support a claim for damages in excess of $75,000. Doc. 7 at 4.

### B. Federal Question Jurisdiction

"Under 28 U.S.C. § 1331, a federal district court has 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" Weeks Constr., Inc. v. Oglala Sioux Hous. Auth., 797 F.2d 668, 672 (8th Cir. 1986) (quoting 28 U.S.C. § 1331). "A non-frivolous claim of a right or remedy under a federal statute is sufficient to invoke federal

---

[5] Regardless of whether Defendants' Motion to Dismiss mounts a facial or factual attack, this Court finds that it has jurisdiction over this suit.

question jurisdiction." Id. (citing Nw. S.D. Prod. Credit Ass'n v. Smith, 784 F.2d 323, 325 (8th Cir. 1986)). Ngam pleaded "discrimination" and "racial prejudice." Doc. 1 at 1, 3. The Court liberally construes this as a discrimination claim under Title VII of the Civil Rights Act of 1964. See Pub. L. No. 88-352, 78 Stat. 253, 255 § 703(a) (codified at 42 U.S.C. § 2000e-2(a)) (prohibiting employers from discriminating against their employees with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin"). Thus, because Title VII claims arise under federal law, this Court has federal question jurisdiction over Ngam's discrimination claim. This Court will separately analyze Ngam's Title VII claim under Federal Rule of Civil Procedure 12(b)(6). See infra at 11–13.

### C. Diversity Jurisdiction

For diversity jurisdiction in this case, the sole question at issue is whether the amount claimed in Ngam's Complaint exceeds the jurisdictional threshold of $75,000.[6] "[A] complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" Larkin v. Brown, 41 F.3d 387, 388 (8th Cir. 1994) (second alteration in original) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). "But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount . . . the suit will be dismissed." St. Paul Mercury Indem. Co., 303 U.S. at 289. Put differently, "[t]he district court

---

[6] Defendants do not dispute that there is complete diversity of citizenship between the parties. See generally Docs. 7, 12. This Court is also not aware of any facts indicating that the parties are not completely diverse.

has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002). "Absolute certainty . . . is not required." Hedberg v. State Farm Mut. Auto. Ins., 350 F.2d 924, 928 (8th Cir. 1965) (citing Aetna Cas. & Sur. Co. v. Flowers, 330 U.S. 464, 468 (1947)).

Once a defendant "challenges the plaintiff's allegations of the amount in controversy," as Defendants do here, "the plaintiff must [then] establish jurisdiction by a preponderance of the evidence." Kopp, 280 F.3d at 884–85 (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 188–89 (1936)). See also 14B Wright & Miller's Federal Practice and Procedure § 3704 (5th ed. 2025) ("[W]hen challenged by the court or the defendant, in all cases originally commenced in a federal court, the plaintiff bears the initial burden of showing that it does not appear to a legal certainty that the claim is for less than the statutory jurisdictional amount; it must do so with competent proof showing a reasonable probability that the claim exceeds the jurisdictional amount."). The jurisdictional fact that must be proved "is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are." Kopp, 280 F.3d at 885.

Defendants posit that Ngam has not satisfied this burden because "[s]he has not alleged any facts establishing the alleged harm suffered would entitle her to more than $75,000.00." Doc. 7 at 5. Defendants specifically argue that Ngam's claim that she had a case before the SDBON that did not move forward is insufficient to show $75,000 in money damages because she has not alleged any factual information on the nature of her discipline or case. Id.

In Ngam's Complaint, she states that Avera St. Luke's Hospital filed a complaint against her with the SDBON for "behavioral concerns and competency." Doc. 1 at 3. In Ngam's

8

response to Defendants' motion, Ngam further explains that her SDBON claim was a disciplinary action related to care she provided to a patient; the SDBON action resulted in either a reprimand order or a proposed reprimand order. Doc. 9 at 1–2. Ngam's contract with Avera St. Luke's Hospital was terminated, and she was placed on the do not return list. Doc. 9-1 at 3. Further, she alleges that she suffered mental and physical distress as a result from Defendants' actions:

> I suffered sleep problems for several months and for the first time had to rely on over the counter sleep aids to help me sleep at night. This happened for several months and I never struggled with sleep before. I also developed temporary physical problems because of the horrible defamation and being a target in this situation.

Doc. 9 at 4. In Defendants' reply brief, they argue that "[a]n inability to sleep and 'temporary', undefined physical problems does not provide the Court with any basis to determine, based on a preponderance of the evidence, that the fact finder could conclude [Ngam] suffered damages greater than $75,000." Doc. 12 at 2. In support of this position, Defendants cite to Kopp. Id. In Kopp, the Eighth Circuit stated:

> As we see it, the federal court has jurisdiction here unless, as a matter of law, Ms. Kopp could not recover punitive damages or damages for emotional distress, the amount of damages that she could recover is somehow fixed below the jurisdictional amount, or no reasonable jury could award damages totaling more than $75,000 in the circumstances that the case presents.

Kopp, 280 F.3d at 885. Ultimately, the Eighth Circuit held that the plaintiff had subject-matter jurisdiction because the court was not aware of any damage caps, nor had defendant cited to any damage caps, and a damages award above $75,000 would not have to be set aside as excessive under state law or the due process clause. Id. at 886.

Ngam seeks economic and non-economic damages as well as injunctive relief. Doc. 1 at 3–4. Considering the availability of damages under South Dakota law (SDCL §§ 20-11-1

through 20-11-8 and SDCL §§ 21-3-1 through 21-3-2), this Court at this time cannot determine as a matter of law based on the facts alleged that the amount in controversy does not exceed $75,000 or that an award above $75,000 would be excessive. See George v. Wintroub, 8:23-CV-338, 2024 WL 1720893, at *4 (D. Neb. Apr. 22, 2024). Thus, Ngam has sufficiently alleged that this Court has diversity jurisdiction over her state-law claims.[7] This Court separately analyzes whether Ngam's claims arising under state law fail to state a claim under Rule 12(b)(6). See infra at 13–17.

## III. Motion to Dismiss For Failure to State a Claim

### A. Legal Standard

Rule 12(b)(6) permits a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss under Rule 12(b)(6), it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

---

[7] Even if diversity jurisdiction had not been shown to be proper, supplemental jurisdiction is proper under 28 U.S.C. § 1367. Courts can exercise supplemental jurisdiction over claims against a party that "derive from a common nucleus of operative facts." Travelers Ins. v. Intraco, Inc., 163 F.R.D. 554, 557 (S.D. Iowa 1995) (quoting Ammerman v. Sween, 54 F.3d 423, 424 (7th Cir. 1995)). Because Ngam's defamation and alteration of patient medical records claims are all directly linked to the reprimand against her nursing license and employment discrimination claim under Title VII, this Court would also have supplemental jurisdiction over Ngam's state-law claims.

On a motion to dismiss under Rule 12(b)(6), "[c]ourts must accept a plaintiff's factual allegations as true" and construe all reasonable inferences in the plaintiff's favor "but need not accept a plaintiff's legal conclusions." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012) (citing Ashcroft, 556 U.S. at 678). When ruling on a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (citation modified).

"Pro se complaints, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers." Shaw v. Kaemingk, No. 4:17-CV-04116-KES, 2018 WL 3682502, at *2 (D.S.D. Aug. 2, 2018) (citation modified). "Nonetheless, a pro se complaint must comply with the minimal requirements set forth in the Federal Rules of Civil Procedure, which specifically require pleadings to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). The court may dismiss a pro se complaint that lacks these bare essentials. Id. (citing Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985)).

As the moving party under Rule 12(b)(6), Defendants bear the burden of proving that no claim exists. See 5B Wright & Miller's Federal Practice and Procedure § 1357 (4th ed. 2025).

### B. Discrimination

Liberally construing Ngam's first claim, she alleges that she was discriminated against in violation of Title VII. A plaintiff establishes "a prima facie case of race discrimination by showing '(1) [she] was a member of a protected group; (2) [she] was qualified to perform the

11

job; (3) [she] suffered an adverse employment action; and (4) circumstances permit an inference of discrimination.'" Banks v. John Deere & Co., 829 F.3d 661, 666 (8th Cir. 2016) (quoting Xuan Huynh v. U.S. Dep't of Transp., 794 F.3d 952, 958 (8th Cir. 2015)). At the pleadings stage, however, a plaintiff need not establish a prima facie case. Warmington v. Bd. of Regents of Univ. of Minn., 998 F.3d 789, 796 (8th Cir. 2021). Rather, the elements are "part of the background against which a plausibility determination should be made." Id. (quoting Blomker v. Jewell, 831 F.3d 1051, 1056 (8th Cir. 2016)).

 First, Ngam pleaded that she is a member of a protected class discriminated and prejudiced against because of her "specie[s]." Doc. 9 at 3. This Court liberally construes the "species" allegation as Ngam being a part of a protected class because of her race. Second, Ngam is qualified for her position at Avera as a nurse, because she is a licensed nurse and alleged that she took up the common practices of the hospital when it came to her patient care. Id. at 1. Third, Ngam alleges that she suffered an adverse employment action because of the alleged racial discrimination. Id. at 3–4. The SDBON initiated a proposed reprimand against her license, her contract was canceled for cause, and she was placed on Avera's do not return list. Id. at 2; Doc. 9-1 at 3. Fourth, Ngam specifically recalls a time when a similar situation had occurred with a nurse of another race, and Kludt had contacted the nurse to let her explain her side of the story before initiating a reprimand or removing her from the work schedule. Doc. 9 at 4. Ngam alleged the reason Kludt did not come to her directly, as she did with another nurse in a similar position, was because of her "species," which gives rise to an inference of discrimination. Id. at 3–4. Liberally construing Ngam's Complaint, she plausibly pled a racial discrimination

claim under Title VII. For this reason, Ngam's discrimination claim survives Defendants' Motion to Dismiss.[8]

### C. Defamation

Ngam next claims she was defamed. Doc. 1 at 3. She alleges defamation arose from communications between Kludt, a nurse, and the SDBON. See generally Doc. 9.

"Defamation includes both libel[9] and slander.[10]" Schwaiger v. Avera Queen of Peace Health Servs., 714 N.W.2d 874, 878 (S.D. 2006) (citing SDCL § 20-11-2). "By definition, both libel and slander are 'unprivileged' communications." Id. (citations omitted). For this reason, a defamation claim "may not survive if the alleged defamatory communication was privileged." Id. (citing Peterson v. City of Mitchell, 499 N.W.2d 911, 915 (S.D. 1993)).

Under South Dakota law, a privileged communication is one made:

(1) In the proper discharge of an official duty;

(2) In any legislative or judicial proceeding, or in any other official proceeding authorized by law;

---

[8] Defendant does not address whether Kludt can be held liable for the remaining discrimination claim. Because Defense Counsel did not raise this issue, this Court will not address this issue sua sponte.

[9] "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." SDCL § 20-11-3.

[10]   Slander is a false and unprivileged publication, other than libel, which:
(1) Charges any person with crime, or with having been indicted, convicted, or punished for crime;
(2) Imputes to him the present existence of an infectious, contagious, or loathsome disease;
(3) Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit;
(4) Imputes to him impotence or want of chastity; or
(5) By natural consequence, causes actual damage.

SDCL § 20-11-4.

13

> (3) In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information;
>
> (4) By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding or of anything said in the course thereof.

SDCL § 20-11-5. Defendant argues that any statements made related to Ngam's care of a patient are protected under subsections (1) and (3). Doc. 7 at 6–7.

In accordance with subsection (1), "[i]t has long been recognized that a defamatory statement issued by a public official in the proper discharge of his official duties is absolutely privileged." Ruple v. Weinaug, 328 N.W.2d 857, 860 (S.D. 1983) (quoting Hackworth v. Larson, 165 N.W.2d 705, 709 (S.D. 1969)). The absolute privilege protection for subsection (1) applies whether or not the statement is false or made with malice. Waln v. Putnam, 196 N.W.2d 579, 583–84 (S.D. 1972); Pawlovich v. Linke, 688 N.W.2d 218, 222 (S.D. 2004) (citing Setliff v. Akins, 616 N.W.2d 878, 891 (S.D. 2000)). However, Kludt does not argue that she was "an officer and public official." See Ruple, 328 N.W.2d at 860. This Court is not aware of, and Kludt does not cite to, any authority extending subsection (1) to statements by private actors.[11]

Subsection (3) is called the "common interest privilege."[12] Pawlovich, 688 N.W.2d at 224. "[T]he common interest privilege applies where 'persons having a common interest in a

---

[11] Defendant cites to Pawlovich to support that "statements made to professional licensing boards of healthcare professionals are privileged as part of 'official duties'," Doc. 7 at 7 (citing Pawlovich, 688 N.W.2d at 222–24), but Pawlovich was addressing SDCL § 20-11-5(2), which applies to official proceedings. Defendant has not argued that these statements were privileged as part of an official proceeding authorized by law. See generally Doc. 7.

[12] Courts are split on whether considering the common interest privilege is appropriate at the motion to dismiss stage or should be delayed until the summary judgment stage. See Elkharwily v. Mayo Holding Co., 955 F. Supp. 2d 988, 1000 (D. Minn. 2013) (granting motion to dismiss because plaintiff failed to plead facts demonstrating that defendant lost qualified privilege by making statements with malice); Sandoval v. Lockheed Martin Corp, No. 2:24-cv-06437-SVW-RAO, 2025 WL 43273, at *5 (C.D. Cal. Jan. 7, 2025) (granting motion to dismiss for common interest privilege when employer publication was made pursuant to investigation of employee conduct and malice was not shown), appeal docketed, No.

14

particular matter correctly or reasonably believe that there is information that another sharing the common interest is entitled to know.'" Setliff, 616 N.W.2d at 891 (quoting Tibke v. McDougall, 479 N.W.2d 898, 905 (S.D. 1992)). This is considered a "conditional privilege . . . because the communication is only 'privileged' if it is made 'without malice.'" Pawlovich, 688 N.W.2d at 222 (quoting Flugge v. Wagner, 532 N.W.2d 419, 421 (S.D. 1995)). Thus, the Court must first determine whether the common interest privilege applies and, if it does, then the Court must then "address the question of malice." Id. at 224.

Here, Ngam alleges that Defendants made defamatory statements regarding her competency to be a nurse. See generally Doc. 9. Ngam does not dispute that Defendants had an obvious interest in knowing concerns of behavior and competency of the employees at Avera. Ngam alleges that a fellow nurse communicated Ngam's actions and performance at the hospital with Kludt. Doc. 9 at 3. Kludt forwarded the report and a summary of the reports she received to Avera staff in the human resources department. Doc. 9-1 at 3–4. Although not clearly stated, Ngam also appears to allege in her sur-reply that Avera forwarded the reports to Jim Hall Prime Time Healthcare LLC, which was the agency that employed Ngam. Doc. 13 at 1. Kludt's

---

25-1814 (9th Cir. Mar. 19, 2025); Edwards v. Am. Med. Ass'n, No. 23-2026, 2025 WL 444424, at *3–6 (4th Cir. Feb. 10, 2025) (per curiam) (affirming district court's order granting motion to dismiss defamation claim based on common interest privilege); Erdman v. Victor, 20 Civ. 4162 (LGS), 2021 WL 2481254, at *2 (S.D.N.Y. June 17, 2021) ("Plaintiff's argument that the common interest privilege cannot be raised in a motion to dismiss is incorrect. A lack of privilege is an element of a defamation claim under New York law. It is Plaintiff's burden to plead each element of his claim, including the lack of privilege, and the Complaint's failure to meet this burden is reviewable on a motion to dismiss." (citation omitted)); Unlimited Cellular, Inc. v. Red Points Sols. SL, 677 F. Supp. 3d 186, 198–99 (S.D.N.Y. 2023) ("Because the Second Circuit Court of Appeals cautions against the use of a qualified privilege in deciding a motion to dismiss, and New York courts are split, the Court declines to consider Defendants' privilege argument at this stage."); Armenian Assembly of Am., Inc. v. Cafesjian, 597 F. Supp. 2d 128, 138 (D.D.C. 2009) ("Where the facts surrounding publication are undisputed, whether a statement is protected by the common interest privilege is a question of law. It follows that, where questions of fact are in dispute concerning the publication of a statement, a Court cannot determine on a motion to dismiss whether the privilege has been properly invoked." (citation modified)). This Court believes in this particular circumstance that it would be appropriate to consider the common interest privilege at the motion to dismiss stage.

statements stem from her role as a supervisor to investigate the performance and on-duty actions of her employees to maintain the hospital's patient care and customary practices. See Pawlovich, 688 N.W.2d at 220–24 (recognizing that statements related to a health care investigation were protected by common interest privilege). Avera appears to have forwarded the statements to the agency employing Ngam due to their duty to explain the reason for terminating her contract and out of concern for patients. Doc. 12 at 2. A common business interest may exist between employers and the third-party staffing agency with which the employer did business. See Akarah v. Ohio Dep't of Rehab, 253 N.E.3d 712, 720–23 (Ohio Ct. App. 2024). Ngam does not dispute that Avera and Jim Hall Prime Time Healthcare LLC, due to her employment, had a business interest in knowing about behavioral and competency concerns that resulted in her termination.[13] Thus, the common interest privilege applies, and the Court must now determine whether Ngam alleges malice.

"[M]alice cannot be presumed." Id. at 224 (citation omitted). Accordingly, the South Dakota Supreme Court "has long held that the plaintiff has the burden of proving actual malice that destroys the privilege." Petersen v. Dacy, 550 N.W.2d 91, 93 (S.D. 1996) (citations omitted). "The real test of whether a defendant's conduct is reckless so as to constitute actual malice is whether [she] 'in fact entertained serious doubts as to the truth of [her] publications.'" Tibke, 479 N.W.2d at 906 (quoting Uken v. Sloat, 296 N.W.2d 540, 543 (S.D. 1980)). Thus, Ngam must establish that Defendants had "a reckless disregard for the truth or actual malice." Petersen, 550 N.W.2d at 93.

---

[13] Ngam appears to indicate that the information from Avera was then communicated to the SDBON, but the form indicates that the Jim Hall Prime Time Healthcare, LLC, was ultimately responsible for the information being forwarded. Doc. 9-1 at 2; see also Doc. 13 at 1 (indicating that the staffing agency merely signed the complaint to confirm where she was licensed and alleging that the statements provided to the SDBON were Avera's statements).

16

Here, Ngam claims that there were "several made up stories by Avera Staff and especially a 'tele nurse' who wanted her contract extended . . . . This nurse initiated a complain [sic] regarding [Ngam's] care of a patient in which she made false accusations, intended to damage [Ngam's] competency and character before the board." Doc. 1 at 3; see also Doc. 9 at 1 ("the travel nurse at the head of this fabrication"); Doc. 9 at 2–3 (describing allegedly false statements from Hargrove). However, Ngam does not appear to name the tele nurse as a defendant. Doc. 1 at 1. Ngam claims that Hargrove "teamed up with a handful of nurses to blow things out of proportion, create chaos, defame [Ngam] in an effort to have the hospital extend" Hargrove's contract. Doc. 9 at 3. But Ngam does not allege that Kludt was one of the nurses involved with creating false statements. Id.

Ngam claims that "[o]n the board of nursing reprimand order, the hospital twisted the narrative" and alleged a "completely misleading statement." Id. at 1. She also claims that "[t]he hospital provid[ed] false information, inadequate documentation to the board of nursing." Doc. 1 at 4. However, Ngam does not allege any facts indicating that Kludt or the Avera St. Luke's Hospital had any knowledge or had serious doubts concerning the truth of the statements in the communications.[14] Kludt's statement even indicates her intent to follow up with the hospitalist on duty to investigate the complaints. Doc. 9-1 at 6. Even so, the South Dakota Supreme Court held that an employer's failure to investigate a report of employee misconduct before forwarding the statement to a reporting authority does not alone establish an employer's serious doubt about the truth of the publication or reckless disregard for the truth. Harvey v. Reg'l Health Network,

---

[14] In a brief filed after Defendant's reply brief, Ngam alleges that "Kludt further mobilized the nurses to defame [Ngam] and cancel [her] contract." Doc. 13 at 1. Ngam did not move for leave to file a sur-reply, but even if this Court were to consider the alleged facts, Ngam's statement is insufficient to allege that Kludt had knowledge or doubts concerning the truth of the statement. It merely appears that Ngam is alleging the Kludt encouraged nurses to document statements of what they claimed to have observed regarding Ngam's care. See generally Docs. 9, 9-1, 13.

Inc., 906 N.W.2d 382, 392–93 (S.D. 2018). The communications by Kludt appear to be sent to other employees of Avera for investigative purposes, and Avera staff forwarded the communications to Ngam's employer to explain her discharge and address concern for patients. Doc. 9-1. Thus, Ngam fails to allege malice from any named defendant and, as such, the communications at issue are privileged. For this reason, Ngam's defamation claim fails and is dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(6).

### D. Alteration of Medical Records

Ngam's last claim alleges that the hospital made alterations to her patient's medical records. Doc. 1 at 1, 3. Defendants argue that there is not a recognizable or cognizable claim for alteration of medical records. Doc. 7 at 7. The United States District Court for the District of Minnesota has also held that there is no authority to recognize an independent cause of action for altering medical records under the Constitution or any federal law. Smith v. United States, No. 13-cv-3277 (JRT/LIB), 2015 U.S. Dist. LEXIS 12802, at *31–32 (D. Minn. Jan. 5, 2015). Ngam does not cite to any authority under which her claim for alteration of patient medical records arises, and this Court has found no federal or state authority for Ngam to successfully bring a claim against a co-worker for altering one of her patient's medical records. Thus, Ngam's alteration of patient medical records claim is dismissed.

### IV. Order

For the above reasons, and the record as it now exists before this Court, it is

ORDERED that Defendants' Motion to Dismiss, Doc. 6, is granted in part and denied in part. Defendants' motion is granted to the extent that it seeks dismissal of Ngam's defamation and alteration of patient medical records claims. Defendants' motion is denied to the extent that it seeks to dismiss Ngam's discrimination claim. It is further

18

ORDERED that Ngam's defamation and alteration of patient medical records claims are dismissed without prejudice.

DATED this 12th day of September, 2025.

BY THE COURT:

_____
ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE